IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

GARRY CLAYTON, On Behalf
of himself and all others similarly
situated                                                                                          PLAINTIFF

V.                                      5:07CV00214 JMM

BATESVILLE CASKET COMPANY, INC.                                    DEFENDANT

## ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Pending is the Plaintiff's Motion for Class Certification. (Docket # 129). Defendant has responded and both parties have filed replies. Also pending are Plaintiff's supplement to the motion for class certification, (docket # 153) and Plaintiff's motion to strike undisclosed exhibits and undisclosed witness statements, (docket # 144). For the reasons set forth below, the Motions are DENIED.

I.    Background

Plaintiff, Garry Clayton, brings suit against Batesville Casket Company, Inc. ("BCC") seeking damages on behalf of himself and a Class of similarly situated persons who purchased split top metal Gasketed Caskets ("Gasketed Caskets") manufactured and warranted by BCC from a licensed funeral home located in Arkansas from January 1, 1989 up to and including August 31, 2002. Plaintiff's third amended complaint alleges causes of action for violations of the Arkansas Deceptive Trade Practice Act ("ADTPA"), fraud, constructive fraud, fraudulent concealment, breach of express and implied warranties and unjust enrichment.

BCC manufactures burial caskets, which it distributes and sells to funeral homes across the United States and throughout the State of Arkansas. BCC is the largest manufacturer of

caskets in the United States and sells to two hundred (200) of the three hundred and forty-nine (349) funeral homes in the State of Arkansas.

Plaintiff alleges that BCC manufactured, distributed and sold metal Gasketed Caskets, which it represented and warranted were protective sealer caskets or leak proof caskets, which would protect the dignity of the deceased by protecting the deceased from the elements. Plaintiff contends that BCC marketed these caskets as completely resistant to the entrance of water, air or other gravesite elements.  Plaintiff contends that the Federal Trade Commission issued a Cease and Desist Order to BCC on March 31, 1988 ordering BCC to cease and desist from:

> Misrepresenting, directly or by implication, the durability or expected life of any casket, including but not limited to any misrepresentation of the period of time after interment, whether stated as a specific number of years or generally, during which any casket is designed, or in the ordinary course of events can reasonably be expected, to prevent the entrance of air, water, or other gravesite substance.

Plaintiff argues that BCC marketed, distributed and sold Gasketed Caskets in direct violation of the Federal Trade Commission Cease and Desist Order.  Plaintiff contends that BCC continued to market and represent its Gasketed Caskets as completely resistant to the entrance of air and water during the Class period.  Plaintiff seeks damages from BCC arguing that (1) BCC warranted the Gasketed Caskets to be "completely resistant to the entrance of air and water," a warranty BCC could not meet and universally breached; and (2) BCC engaged in a fraudulent scheme to increase the purchase price of Gasketed Caskets by marketing and warranting the Gasketed Caskets as providing unique protection for the dignity of the deceased.  Plaintiff contends that BCC engaged in a promotional scheme representing its Gasketed Caskets as completely resistant to the entrance of air and water in an attempt to deceive the Plaintiff and other Class Members knowing that the Gasketed Caskets did not provide the deceased protection

from the elements and did not prevent the entrance of air and water.

Plaintiff seeks to certify a Class of persons who purchased split top Gasketed Caskets manufactured by BCC Company, Inc. from a licensed funeral home located in Arkansas from January 1, 1989 up to and including August 31, 2002. Plaintiff contends that absent certification, these Class Members will remain largely ignorant of the fraudulent scheme and BCC will be allowed to profit from its fraudulent acts.

II.     Rule 23 Class Certification Standard

To be certified as a class, a plaintiff has the burden of showing that all of the requirements of Rule 23(a) are met. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if : (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R.Civ. P. 23(a)). These requirement are commonly referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

In addition to the requirements of Rule 23(a), Plaintiff must also show that his claims fall within one of the categories of Rule 23(b). Plaintiff seeks to certify his class under Rule 23(b)(3), the so-called "common question" or "damages" class action. To certify a class action under Rule 23(b)(3), the Court must find that: 1) common questions predominate over any questions affecting only individual members; and 2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. *Blades v. Monsanto Co.,* 400

F.3d 562, 568-569 (8th Cir. 2005)(citing Fed. R.Civ.P. 23(b)(3); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615(1997)). Alternatively, Plaintiff seeks to certify his class under Rule 23(b)(2) arguing that he seeks declaratory relief. Class certification under Rule 23(b)(2) is proper only when the primary relief sought is declaratory or injunctive. Although Rule 23(b)(2) contains no predominance or superiority requirements, class claims thereunder still must be cohesive. *In re St. Jude Medical, Inc*. 425 F.3d 1116, 1121 (8th Cir. 2005)

      A district court has broad discretion in determining a motion for class certification and should conduct a rigorous Rule 23 analysis before certifying a class. *Spence v. Glock, Ges.m.b.H,* 227 F.3d 308, 310 (5th Cir. 2000). Because the Court finds it determinative, a discussion of the requirements of Rule 23(b) is all that is necessary.

      The focus of Rule 23(b)(3) is that common issues predominate over individual issues and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. "To satisfy the 'predominance' standard, plaintiffs must show that [their claims] can be proven on a systematic, class-wide basis." *In re Prempro*, 230 F.R.D. 555, 566 (E.D.Ark. 2005)(quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 569 (8th Cir. 2005). This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24. "Determining whether common issues predominate and the class action is superior requires consideration of the relevant claims, defenses, facts, and substantive law presented." *In re Prempro*, 230 F.R.D. at 566.

      III.    <u>Discussion</u>

      Plaintiff argues that the individual Class Members claims arise from a uniform set of facts regarding (1) BCC's warranty of Gasketed Caskets; (2) BCC's uniform breach of its warranty;

4

(3) BCC's uniform fraudulent marketing scheme for all Gasketed Caskets; and (4) concealment of the truth about the Gasketed Caskets. Plaintiff argues that these common issues predominate over any possible individual issue raised by the claims presented. Plaintiff also claims that common legal questions predominate in the case. Plaintiff alleges that BCC warranted the Gasketed Caskets to be "completely resistant to the entrance of air and water," a warranty that BCC could not meet and universally breached. Plaintiff claims that BCC engaged in a fraudulent scheme to increase the purchase price of the Gasketed Caskets by warranting the caskets to be "completely resistant to the entrance of air and water," a claim BCC knew to be false. Plaintiff argues that Arkansas law of fraud, constructive fraud, fraudulent concealment, breach of contract, unjust enrichment and violation of the Deceptive Trade Practice Act are all common and uniformly applied to the class.

### A. Fraud, fraudulent concealment and constructive fraud.

To prove fraud, a party must show (1) a false representation of material fact, (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation, (3) an intent to induce action or inaction in reliance upon the representation, (4) justifiable reliance on the representation, and (5) damage suffered as a result of the reliance. *Brennan v. Wadlow,* 372 Ark. 50, 54, 270 S.W.3d 831, 834 - 835 (2008)

"Unlike actual fraud, constructive fraud is simply a breach of a legal or equitable duty, which, irrespective of the moral guilt of the fraud-feasor, the law declares to be fraudulent because of its tendency to deceive others." *Burgess v. French,* 100 Ark.App. 51, 54-55, 263 S.W.3d 578, 581 (2007). Although, "neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud" and the representation can be made in good faith,

"the key [is] that the buyer relied to his detriment on statements that proved to be untrue." *Pickering v. Garrison,* 2009 WL 398223, 6 (Ark.App.2009).

Fraudulent concealment consists of some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed or perpetrated in a way that it conceals itself. *Brennan v. Wadlow,* 372 Ark. 50, 55, 270 S.W.3d 831, 835 (2008) citing, *Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895, 935 S.W.2d 258 (1996).

The Eighth Circuit Court of Appeals has repeatedly held that fraud cases are often unsuitable for class treatment. In fact, the advisory committee's note, discussing the 1966 Amendment to subdivision (b)(3) of Federal Rule of Civil Procedure 23 cautions: "[A]lthough having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." *See, In re St. Jude Med., Inc.*, 522 F.3d 836, 838-40 (8th Cir. 2008).

The evidence presented demonstrates that each casket purchase decision is an individual transaction between a consumer and an independent funeral home. Although BCC provided each funeral home carrying their products marketing and warranty materials, there is no evidence that each funeral home used the materials in the same manner. Mr. Jim Bob Humphrey, funeral director and owner of Humphrey Funeral Service, testified that it was not his practice to discuss the BCC warranty at the time of casket selection. (Humphrey deposition, p. 47, l. 17-19). Further, Plaintiff testified that he did not see the BCC marketing materials prior to purchase but relied on the oral representations of an employee of the funeral home. (Clayton deposition, p. 32, l. 21-25, p. 33-36, 56-57). BCC sells its caskets to two hundred (200) funeral homes in the State

of Arkansas.  The circumstances of the purchaser, whether an individual, estate, or pre-arrangement contract; the circumstances of the purchase; the reasons for selecting the particular casket purchased; whether any representation was made to the purchaser regarding the "protective nature" of the caskets prior to the selection and whether the purchaser relied on the representation are all individual questions which would require individual inquiry.  Further, at least three different burials are available; directly in the ground, in an unlined vault and in a lined vault, each of which affects the integrity of the caskets.

> The warranty at issue during the class period provided:
>
>> That upon completion of, and immediately before the shipment of this casket, it successfully passed the vacuum test devised by Batesville to assure that, at the time of shipment, it was completely resistant to the entrance of air and water, and,
>>
>> That upon notice to it, Batesville will within ten days replace this casket with one of similar value if, during the period and under the conditions stated below after purchase, it has failed in any way to resist the entrance of air, water or any element found in the soil in which it was interred provided that this casket was purchased from and interred under the supervision of a licensed funeral director, and further provided an opportunity is afforded for examination of the casket by Batesville representatives and/or impartial experts designated by it.
>>
>> . . .
>>
>> This Warranty shall be void in the event the casket is not properly sealed prior to interment or if the integrity of the casket structure is compromised though improper handling . . . .

The warranty itself creates a number of potential affirmative defenses for BCC including;  the circumstances of the interment, whether the casket was properly sealed and whether the integrity of the casket structure was compromised through improper handling.

> The Court finds Plaintiff's fraud, fraudulent concealment and constructive fraud claims

unsuitable for class certification. Plaintiff's causes of action raise a number of individual issues and potential affirmative defenses will vary depending on the individual circumstances of the purchase and burial. Because the proof will vary with each separate transaction, class certification is not suited for these claims. *See*, *Darms v. McCulloch Oil Corp*., 720 F.2d 490, 493 (8th Cir.1983) (district court did not abuse discretion in refusing class certification where transactions were separate, and involved different representations and degrees of reliance); *In re St. Jude Medical, Inc*. 522 F.3d 836, 838 (8th Cir. 2008) (reversing the district court's certification of a class finding that the resolution of the defendant's liability would be dominated by individual issues of causation and reliance).

      B.  Breach of contract.

Plaintiff claims that he will present common class-wide proof that BCC expressly warranted that the Gasketed Caskets were "completely resistant to the entrance of air and water," and that BCC universally breached this warranty with each Class Member. "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Ark.Code Ann. § 4-2-313(1)(a). "An affirmation of fact must be part of the basis of the parties bargain to be an express warranty. When a buyer is not influenced by the statement in making his or her purchase, the statement is not a basis of the bargain." *Ciba-Geigy Corp. v. Alter,* 309 Ark. 426, 447, 834 S.W.2d 136, 146 - 147 (Ark.,1992).

Individualized proof would be required as to whether any affirmation of fact or promise was made to each purchaser by the funeral home salesperson or whether the purchaser received the BCC warranty and marketing material, the consumer's understanding of the representations

made and whether the purchaser was influenced by the representation in making his or her purchase. If the consumer was not influenced by a representation or statement made, the representation or statement cannot be a basis for the bargain and no express warranty exists.

To recover for breach of an implied warranty of fitness for a particular purpose, the plaintiff must prove "1) that he has sustained damages; 2) that at the time of contracting, the defendant had reason to know the particular purpose for which the product was required; 3) that defendant knew the buyer was relying on defendant's skill or judgment to select or furnish the product; 4) that the product was not fit for the purpose for which it was required; 5) that this unfitness was a proximate cause of plaintiff's damages; and 6) that plaintiff was a person whom defendant would reasonably have expected to use the product." *E.I. Du Pont de Nemours and Co. v. Dillaha,* 280 Ark. 477, 480, 659 S.W.2d 756, 757 - 758 (1983).

To recover for breach of implied warranty of merchantability, the plaintiff must prove "1) that he has sustained damages 2) that the product sold to him was not merchantable, i.e., fit for the ordinary purpose for which such goods are used; 3) that this unmerchantable condition was a proximate cause of his damages; and 4) that he was a person whom the defendant might reasonably expect to use or be affected by the product." *Id.*

To succeed on claims of implied warranty of merchantability and implied warranty of fitness a plaintiff must demonstrate that the condition of the product proximately caused his damages. Plaintiff relies, in part, on the testimony and testing of Don R. Johnston. Mr. Johnston opined that "none of the split top gasketed caskets manufactured by Batesville Casket are completely resistant to the entrance of air and water, for any period of time." Mr. Johnston opined that each casket would leak at the gasket. However, Mr. Johnston admits that he has no

proof that caskets are subjected to water at the level of the gasket under normal interment conditions. (Johnston deposition, p. 56 and 66.) Further, he admits that he has no evidence that BCC caskets leak at any other point. (Id., at 50-56, 60-62, 72 and 126-27). Finally, Mr. Johnston admits that his test did not simulate burial in a vault, lined or unlined. (Id. at 42-43, 66, 76, 105-106 and 125). Mr. Johnston tested a single 20 gauge metal casket and admits that the integrity of the casket and its resistance of outside elements depends in part on the thickness of the metal. (Id. at 42). Mr. Johnston's test and opinion do not account for the individual variables which exist in each individual purchase and interment.

Plaintiff also relies on the affidavits of Dan Rohling, CFSP, Judith Valenti, CFSP, Mark Malcom and Frank J. Peretti each of whom testify as to their personal experience and opinions concerning BCC caskets. However, none of the evidence accounts for the individual variables associated in each interment, including the proximate cause of any leakage found. Accordingly, the Court finds that Plaintiff has failed to demonstrate class-wide proof that each casket failed and that the conditions of the caskets at the time of purchase proximately caused each class member damages.

      C.  <u>Unjust enrichment</u>.

The Court has previously acknowledged that under Arkansas law, the concept of unjust enrichment has no application when a valid express written contract exists governing the transaction. *Servewell Pumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 612, 210 S.W.3d 101,112 (2005). However, the Court allowed Plaintiff to proceed noting the Plaintiff's right to state his case on alternative theories. The Court specifically held that if a valid and enforceable contract is found to exist the Plaintiff's claims would be submitted as a contract

claim. Otherwise, Plaintiff's claims for unjust enrichment would proceed to the jury. Accordingly, to determine if any particular class member's claim for unjust enrichment should proceed, the Court would be required to determine if a valid and enforceable contract existed between the individual class member and BCC. The evidence demonstrates that BCC sold the caskets at issue to each individual funeral home and the funeral home entered the purchase agreement with the individual consumer. The funeral home had the right to set the price of each sales transaction and there is no proof that the individual and independent funeral home directors conducted the transactions in a similar manner. Further, there is no evidence that each funeral home maintained copies of the sales contracts or the warranties issued during the class period. Again, individual issues predominate the Court's inquiry defeating Plaintiff's predominance argument.

### D.  Violation of the Arkansas Deceptive Trade Practices Act.

The Arkansas Deceptive Trade Practices Act ("ADTPA") prohibits knowingly making false representations as to the characteristics of goods or services as well as engaging in "any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann §4-88-107. As used in connection with the sale or advertisement of any goods, the Act prohibits "[t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. §4-88-108(2). The ADPTA provides a private cause of action for any person who suffers actual damage or injury as a result of practices declared unlawful under the Act. See, Ark. Code Ann. §4-88-113. Thus, proof of actual damage and proximate cause are required.

As previously explained Plaintiff's evidence of actual damage and proximate cause fail to

account for the individual variables associated in each interment, including the proximate cause of any leakage found to exist. Accordingly, the Court finds that Plaintiff has failed to demonstrate class-wide proof of either damage or proximate cause.

Plaintiff has failed to show that common issues predominate over individual issues. He has also failed to meet his burden of establishing that a class action is the superior way to handle this case. Here the individual factual determinations required overwhelm the common questions posed. The individual factual issues that "defeat the predominance requirement of Rule 23 (b)(3) also pose an obstacle to class certification in the rule 23(b)(2) context." *In re Rezulin Products Liability Litigation*, 210 F.R.D. 61, 75 (S.D.N.Y. 2002), *See also, Barnes v. American Tobacco Co.*, 161 F.3d 127 (3rd Cir. 1998). . Plaintiff has failed satisfy his burden of showing that class should be certified and that all the elements of Rule 23 are met.

IV. Plaintiff's motion to strike

The Court finds the materials submitted in connection with BCC's response to Plaintiff's motion for class certification responsive to the motion. Several of the affidavits are from third-party witnesses equally accessible to both parties. The declarations from BCC former and current employees explain documents identified in discovery and there is no evidence that Plaintiff's were denied the opportunity to question these individuals in a Rule 30(b)(6) deposition. Accordingly, Plaintiff's motion to strike (docket # 144) is DENIED.

V. Conclusion

For the reasons set forth herein, Plaintiff's Motion for Class Certification (Docket # 129 and 153) are DENIED. Plaintiff's Motion to Strike, (docket # 144) is DENIED.

IT IS SO ORDERED this 10th day of August, 2009.

_____
James M. Moody
United States District Judge